UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


RICHARD S. BENDER,

                Petitioner,

v.                          Case No. 3:08-cv-1232-J-34MCR

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS,[1]
et al.,

                Respondents.

_____

**<u>ORDER</u>**

**<u>I. Status</u>**

      Petitioner Bender initiated this action by filing a <u>pro</u> <u>se</u>
Petition for Writ of Habeas Corpus (Petition) (Doc. #1) under 28
U.S.C. § 2254 on November 19, 2008, pursuant to the mailbox rule.
He challenges a 2007 state court (Duval County, Florida) judgment
of conviction for burglary of a dwelling on three grounds.
Respondents have submitted a memorandum in opposition to the
Petition. <u>See</u> Respondents' Response to Habeas Petition (Response)
(Doc. #13); Exhibits (Resp. Ex.) (Docs. #13, #19). On January 6,
2009, the Court entered an Order to Show Cause and Notice to
Petitioner (Doc. #4), admonishing Petitioner regarding his

_____

     [1] The Secretary of the Florida Department of Corrections is
the proper Respondent having custody of Petitioner.

obligations and giving Petitioner a time frame in which to submit a reply. Petitioner submitted a brief in reply on January 21, 2010. <u>See</u> Petitioner's Reply to the Government's Answer (Reply) (Doc. #17). This case is ripe for review.

## II. Procedural History

On February 16, 2007, the State of Florida charged Richard Scott Bender with burglary of a dwelling (count one) and possession of burglary tools (count two). Resp. Ex. C, Information. Bender entered a negotiated plea of guilty to the charge of burglary of a dwelling in exchange for a sentence of fifteen years of imprisonment with a fifteen-year mandatory minimum sentence pursuant to Florida Statutes § 775.082 and the State's agreeing to drop count two and not seek habitual felony offender sentencing on count one. Resp. Ex. F, Transcript of the Plea Proceeding (Plea Tr.) at 3, 17-18. On March 27, 2007, the trial court sentenced Petitioner, as a prison releasee reoffender, to a term of fifteen years of imprisonment. Resp. Ex. G at 9-14, Judgment. Petitioner did not appeal.

Bender filed a <u>pro se</u> motion to correct illegal sentence on May 31, 2007, pursuant to the mailbox rule. Resp. Ex. G at 1-5. The circuit court, on June 11, 2007, stated that Bender was correctly sentenced, as a prison releasee reoffender, and the sentence is "lawful, correct and appropriate" and therefore denied the motion. <u>Id</u>. at 6. Bender appealed and filed a brief. Resp.

Ex. H.  The State filed a Notice that it did not intend to file an answer brief.  Resp. Ex. I.  Citing <u>West v. State</u> and <u>State v. Dehart</u>,[2] the appellate court affirmed the denial per curiam on December 20, 2007, <u>see</u> <u>Bender v. State</u>, 970 So.2d 892 (Fla. 1st DCA 2007); Resp. Ex. J, and the mandate issued on January 15, 2008, <u>see</u> Resp. Ex. K.

On January 16, 2008, Bender filed a <u>pro</u> <u>se</u> motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 motion).  Resp. Ex. L at 1-19.  In his request for post conviction relief, Bender asserted that his counsel was ineffective because she:  refused to interview, depose, and call the victim as a witness since he would have testified that Bender had permission to be in his home (ground one); coerced Bender to enter the guilty plea when there was a viable defense to the crime which would have proved his innocence (ground two); forced Bender to enter the guilty plea when the State did not have sufficient proof to prove actual intent (ground three); and incorrectly advised him that he did not qualify for prison releasee reoffender sentencing (ground four).  The State responded on April 13, 2008.  <u>Id</u>. at 24-28.  On April 30, 2008, the circuit court denied Bender's Rule 3.850 motion for the reasons in the State's response.  <u>Id</u>. at 29.

---

[2] <u>See</u> <u>West v. State</u>, 818 So.2d 637 (Fla. 1st DCA 2002); <u>State v. Dehart</u>, 913 So.2d 616 (Fla. 2nd DCA 2005).

Bender appealed the denial and filed a brief. Resp. Ex. M. The State filed its Notice that it did not intend to file an answer brief. Resp. Ex. N. On October 3, 2008, the appellate court affirmed the denial per curiam, see Bender v. State, 993 So.2d 515 (Fla. 1st DCA 2008); Resp. Ex. O, and the mandate issued on October 31, 2008, see Resp. Ex. P.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations. See 28 U.S.C. § 2244(d); Response at 3-4.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

# V. Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d). This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).

> As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

> > A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed de novo, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

> Jennings v. McDonough, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted). In sum, "a federal habeas court making the 'unreasonable application'

> inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u>, 529 U.S. at 409, 120 S.Ct. at 1521. Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual findings] by clear and convincing evidence."[3] 28 U.S.C. § 2254(e)(1).

<u>Ward v. Hall</u>, 592 F.3d 1144, 1155-56 (11th Cir.), <u>cert</u>. <u>denied</u>, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Harrington v. Richter</u>, 131 S.Ct. 770, 785 (2011) (holding that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

---

[3] This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[4] A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the

---

[4] In the context of an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, Petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

> proceeding." <u>Id</u>., at 693, 104 S.Ct. 2052.
> Counsel's errors must be "so serious as to
> deprive the defendant of a fair trial, a trial
> whose result is reliable." <u>Id</u>., at 687, 104
> S.Ct. 2052.

<u>Harrington</u>, 131 S.Ct. at 787-88.

The two-part <u>Strickland</u> test applies to ineffective assistance claims concerning both the decision to accept a guilty plea offer and the decision to forgo a plea offer and stand trial. <u>Hill v. Lockhart</u>, 474 U.S. 52, 58-59 (1985). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Ward</u>, 592 F.3d at 1163 (citation omitted). "Surmounting <u>Strickland</u>'s high bar is never an easy task." <u>Harrington</u>, 131 S.Ct. at 788 (quoting <u>Padilla v. Kentucky</u>, 130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is accorded great deference. "The standards created by <u>Strickland</u> and § 2254(d) are both 'highly deferential,' [<u>Strickland</u>], at 689, 104 S.Ct. 2052; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, <u>Knowles</u>[5], 556 U.S., at ----, 129 S.Ct. at 1420." <u>Harrington</u>, 131 S.Ct. at 788.

> The question "is not whether a federal
> court believes the state court's
> determination" under the <u>Strickland</u> standard

---

[5] <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411 (2009).

> "was incorrect but whether that determination
> was unreasonable - a substantially higher
> threshold." <u>Schriro</u>, <u>supra</u>, at 473, 127 S.Ct.
> 1933. And, because the <u>Strickland</u> standard is
> a general standard, a state court has even
> more latitude to reasonably determine that a
> defendant has not satisfied that standard.
> <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664,
> 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)
> ("[E]valuating whether a rule application was
> unreasonable requires considering the rule's
> specificity. The more general the rule, the
> more leeway courts have in reaching outcomes
> in case-by-case determinations").

<u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009); <u>see</u> <u>also</u>
<u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In
addition to the deference to counsel's performance mandated by
<u>Strickland</u>, the AEDPA adds another layer of deference--this one to
a state court's decision--when we are considering whether to grant
federal habeas relief from a state court's decision.").

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Bender claims counsel was ineffective because
she refused to call, interview, or depose the victim (Octavius
Laster) when Laster would have testified that he had given Bender
permission to go inside his residence while he went to the hardware
store to pick up materials necessary for Bender to fix a broken
window on the side of his house. <u>See</u> Petition at 7. Petitioner
sufficiently exhausted the issue by raising this ground in his Rule
3.850 motion, as ground one. Ultimately, relying on the reasoning

in the State's response,[6] the court denied the motion on the merits with respect to this claim.  Upon Bender's appeal, the appellate court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial of the Rule 3.850 motion on the merits, there are qualifying state court decisions.  Therefore, this claim will be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA.  After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.  Nor were the adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Alternatively, if the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit.  The record supports the trial court's findings.  According to the Arrest and Booking Report, see Resp. Ex. B, the facts are as follows.  Neighbors observed Bender attempting to gain entry into the victim's home. See id.  According to Marlene Saffice, while observing from her front porch window,

---

[6] See Resp. Ex. L at 25-26.

she saw Bender walk into the front screened-in porch area of the
victim's residence and attempt to open the front door, walk around
the residence and attempt to open the front and side windows, walk
to the back of the residence, and then return to the front of the
residence, where he again attempted to open the front door. See
id. According to Louis Saffice, he also saw Bender attempting to
gain access to the victim's residence, called the police, and kept
the police updated as to Bender's actions until they arrived at the
scene. See id.

The first responding officer discovered that the back right
window was open and broken and that there was a shoe print on the
ground underneath the window. See id. When Laster, the homeowner,
arrived at the scene, he provided a key for the officers to enter
the residence, where they discovered Bender sitting in the living
room smoking a cigarette. See id. At the time of the arrest,
there was an outstanding warrant for Bender's arrest. See id. The
arresting officer discovered a screwdriver in Bender's right rear
pocket and a pocket knife in his right front pocket. See id.
Neither the victim nor Bender mentioned that Bender had the
homeowner's permission to be in the residence to fix a window. See
id. Indeed, according to the victim, Bender was a "stranger." See
id.

Knowing these facts relating to the burglary charge and Bender's prior criminal history,[7] counsel (Rita Mairs) informed the trial judge of Bender's interest in entering a guilty plea to the burglary charge. See Plea Tr. Counsel stated:

> Your Honor, Rita Mairs appearing with Richard Bender, we are looking to enter a plea today. Would be a plea of guilty to the charge of burglary to a dwelling which is Count 1 with the understanding that Mr. Bender would be adjudicated guilty, he would be sentenced to 15 years Florida State Prison, he would be given [a] 15 year mandatory minimum sentence pursuant to section 775.082. There would be court cost[s] in the amount of $338, plus $750 Public Defender lien. And the State would drop Count 2.

Id. at 3. At the plea hearing, counsel notified the judge that the State had filed notices of its intent to classify Bender as both a habitual felony offender and a prison releasee reoffender. Id. at 4. Nevertheless, she opined that "based on how the case law stands at this point and time [Bender] is only going to be classified as a prison releasee reoffender." Id.

When the trial judge informed Bender that he did not have to plead guilty, but rather he could plead not guilty and proceed to trial, Bender affirmed that he understood. Id. at 8. Next, the trial judge advised Bender of his rights to proceed to trial, to

_____

[7] See Resp. Exs. D; E, Notice of Intent to Classify Defendant as a Prison Releasee Reoffender, Notice of Intent to Classify Defendant as a Habitual Felony Offender; see also http://www.dc.state.fl.us/ActiveInmates (showing multiple felony convictions).

call and confront witnesses, and to have those witnesses testify even if they preferred not to testify. <u>Id</u>. at 8-9. Bender acknowledged that he understood his rights and that, by pleading guilty, he would give up his rights to call and confront witnesses and proceed to trial. <u>Id</u>. at 10.

The trial judge asked Bender about his lawyer's statements relating to the plea and if anyone had promised him anything different or anything in addition to what was stated by his lawyer to persuade him to plead guilty, and Bender answered "[n]o, sir." <u>Id</u>. at 10-11. When the trial judge asked if anyone had threatened, intimidated, or coerced him into pleading guilty, Bender again answered, "[n]o, sir." <u>Id</u>. at 11.

Next, the trial judge inquired as to counsel's representation, and the following colloquy ensued.

> THE COURT: Have you had enough time to discuss all the facts and circumstances of your case including any possible defenses you might have with Miss Mairs?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Has she answered your questions?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are there any witnesses you want her to investigate before you enter this plea?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Are there any motions you want her to file before you enter this plea?

> THE DEFENDANT: No, sir.
>
> THE COURT: Are you fully satisfied with her representation?
>
> THE DEFENDANT: Yes, sir.

Id. Bender also confirmed that he understood that, by pleading guilty, he was admitting that he, in fact, did commit the offense. Id. at 11-12.

Upon the judge's request, the State briefly recited the factual basis for the burglary charge.

> As to Count 1[,] the State's evidence would have shown that this defendant in the county of Duval and the State of Florida on January 25th of 2007, did unlawfully enter or remain in a structure, to wit, a dwelling, the property of Octavius Laster with the intent to commit an offense therein, to wit: Theft, contrary to the provisions of section 810.02(3)(B) Florida Statutes.

Id. at 12. Defense counsel neither objected nor stated exceptions to the recited facts, and Bender agreed that he was pleading guilty to those recited facts. Id. Accordingly, the court found "there is a factual basis" for the guilty plea. Id. at 12-13.

Additionally, Bender affirmed that he understood everything relating to the plea that the trial judge had told him during the proceeding and did not need additional time to think about his decision. Id. at 13-14. When the trial judge asked Bender if he had any questions for him or counsel, Bender answered, "[n]o." Id. at 14. After Bender acknowledged that he still wished to enter the plea, see id., the trial judge stated:

14

> Let the record reflect Mr. Bender has
> entered his plea freely, intelligently and
> voluntarily with a full understanding of the
> nature of the offense, the maximum sentence
> and the consequences of his plea. I therefore
> accept his plea of guilty.

Id. at 14-15. As agreed in the plea agreement, see Resp. Ex. G at

7, the State entered a nolle prosequi with respect to the charge

for possession of burglary tools (count two). Plea Tr. at 15.

The accuracy of Bender's statements at the plea proceeding is

reinforced by his post-plea actions. He neither moved to withdraw

the plea nor made any other immediate challenge to the plea.

Moreover, while the record is limited due to the fact that Bender

entered a plea early in the legal process,[8] the Arrest and Booking

Report reflects that neighbors, who had observed Bender attempting

to gain entry into the home through the front door and windows,

called the police to report a burglary in progress. Neither Bender

nor the homeowner ever informed the police that Bender was in the

home with the owner's consent or that Bender had been hired to fix

a broken window. Quite the contrary, the homeowner described Bender

as a stranger and never told police that Bender had permission to

be in his home. See Resp. Ex. B.

In evaluating the performance prong of the Strickland

ineffectiveness inquiry, there is a strong presumption in favor of

---

[8] See Resp. Exs. C, Information, filed February 16, 2007; G at
7, Plea of Guilty and Negotiated Sentence, March 27, 2007. The
offenses occurred on January 25, 2007. See Resp. Ex. C.

competence. The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005) (citations omitted). Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. <u>United States v. Freixas</u>, 332 F.3d 1314, 1319-20 (11th Cir. 2003). Counsel cannot be faulted for failing to call, interview, or depose the victim of the burglary. Given the record, counsel's performance was within the wide range of professionally competent assistance.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59. Petitioner acknowledged that he pled guilty because he was in fact guilty. Plea Tr. at 11-12. Additionally, the State's evidence against Petitioner was substantial: there were two witnesses (neighbors who had watched Bender circle the house several times to attempt to gain entry); the police and homeowner found Bender inside the home; there was an open, broken window with a shoe print on the ground underneath the

window; the homeowner described Bender as a stranger, not someone he had hired to fix a broken window; and Bender never gave police an explanation as to why he entered the home.

The neighbors and the homeowner undoubtedly would have testified against Bender if he had chosen to proceed to trial. If the jury had found Bender guilty of burglary of a dwelling, he would have faced a maximum of thirty years of imprisonment, as a habitual felony offender. Additionally, the State likely would have prosecuted him for possession of burglary tools (count two). However, upon entering the guilty plea, the State agreed to enter a nolle prosequi as to count two and waive habitual felony offender sentencing as to count one. Therefore, Bender's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## B. Ground Two

As ground two, Petitioner asserts that counsel was ineffective because she coerced Bender to enter a guilty plea to the burglary charge when she knew there was a viable defense relating to the homeowner giving Bender permission to be in the residence. As acknowledged by the parties, Petitioner raised this ground in his Rule 3.850 motion. Ultimately, the court denied the motion on the merits as to this claim based on the reasons in the State's response. The appellate court affirmed the trial court's denial per curiam.

Assuming the appellate court affirmed the denial of Petitioner's post conviction motion as to this claim on the merits, there are qualifying state court decisions.[9] Thus, this claim will be addressed applying the deferential standard for federal court review of state court adjudications. Following a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this ineffectiveness claim.

Additionally, even assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit. Petitioner has failed to establish that counsel's performance was deficient. Given the record and Bender's answers to the trial judge's inquiries, there was neither a viable defense nor any coercion on the part of counsel. See Plea Tr.; Resp. Ex. B. The following plea colloquy transpired.

> THE COURT: Mr. Bender, Miss Mairs on your behalf has tendered to the court a plea of guilty to the charge of burglary to a

---

[9] See Harrington, 131 S.Ct. at 785.

dwelling, is that plea entered with your full
knowledge?

THE DEFENDANT: Yes, sir.

THE COURT: Is that plea entered with your
full consent?

THE DEFENDANT: Yes, sir.

THE COURT: Is this what Miss Mairs wants
you to do or what you want to do?

THE DEFENDANT: **What I want to do.**

. . . .

THE COURT: Has anyone threatened,
intimidated or coerced you into pleading
guilty?

THE DEFENDANT: No, sir.

THE COURT: Have you had enough time to
discuss all the facts and circumstances of
your case including any possible defenses you
might have with Miss Mairs?

THE DEFENDANT: Yes, sir.

Plea Tr. at 7, 11 (emphasis added). Moreover, Bender acknowledged

that he was fully satisfied with counsel's representation. Id. at

11. Based on the record, counsel's performance was within the wide

range of professionally competent assistance.

Even assuming arguendo deficient performance by defense

counsel, Petitioner has not shown prejudice.[10] Bender acknowledged

---

[10] See Hill, 474 U.S. at 59 (requiring that petitioner show a
"reasonable probability that, but for counsel's errors, he would
not have pleaded guilty and would have insisted on going to
trial").

that he pled guilty because he was in fact guilty of the burglary.
Id. at 11-12. Additionally, as previously discussed, the State's
evidence against Bender was substantial and included two witnesses
who had observed him attempting to gain access to the home and a
homeowner who had identified him as a stranger. Therefore, Bender's
ineffectiveness claim is without merit since he has shown neither
deficient performance nor resulting prejudice.

### C. Ground Three

As ground three, Petitioner claims counsel was ineffective
because she forced him to enter a plea when the State did not have
sufficient evidence to prove actual intent to commit a crime.
Petitioner sufficiently exhausted the issue by raising this ground
in his Rule 3.850 motion, as ground three. The post conviction
court denied the motion on the merits as to this claim based on the
reasons provided by the State in its response. See Resp. Ex. at
26-27. On appeal, the appellate court affirmed the trial court's
denial per curiam.

Assuming the appellate court affirmed the denial of
Petitioner's post conviction motion as to this claim on the merits,
there are qualifying state court decisions. Thus, this claim will
be addressed applying the deferential standard for federal court
review of state court adjudications. Following a review of the
record and the applicable law, the Court concludes that the state
courts' adjudications of this claim were not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this ineffectiveness claim.

Moreover, assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit. Petitioner has failed to establish that counsel's performance was deficient. The plea transcript is instructive and reflects the voluntary, non-coercive nature of Bender's guilty plea. See Plea Tr. at 7, 11. Bender affirmed that he understood that, by pleading guilty, he was admitting that he did commit the burglary. Id. at 11-12. When the prosecutor set forth the factual basis for the guilty plea (stating the State's evidence would have shown that Bender did unlawfully enter or remain in the dwelling of Octavius Laster with the intent to commit a theft), Bender agreed that he was pleading guilty to those facts. Id. Accordingly, the court found a factual basis for the guilty plea. Id. at 12-13. Given the record, counsel's performance was within the wide range of professionally competent assistance.

Even assuming arguendo deficient performance by defense counsel, Bender has not shown a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would

have insisted on going to trial."[11]   Hill, 474 U.S. at 59.
Therefore, Bender's ineffectiveness claim is without merit since he
has shown neither deficient performance nor resulting prejudice.

### D. Ground Four

As ground four, Petitioner claims that counsel was ineffective
because she misadvised him regarding the prison releasee reoffender
sentencing, and therefore his plea was involuntarily entered.  He
asserts that counsel relied on outdated case law[12] and affirmatively
misadvised him by stating that he did not qualify for prison
releasee reoffender sentencing since he had committed burglary of
an unoccupied dwelling.  See Petition at 17.  As acknowledged by
the parties, Petitioner raised this ground in his Rule 3.850

---

[11] Florida Statutes § 810.07(1) provides: "In a trial on the
charge of burglary, proof of the entering of such structure or
conveyance at any time stealthily and without consent of the owner
or occupant thereof is prima facie evidence of entering with intent
to commit an offense."  See J.M. v. State, 884 So.2d 481 (Fla. 4th
DCA 2004) (per curiam) ("Section § 810.07, Florida Statutes (2002),
establishes that proof of stealthy entry is prima facie evidence of
entering with intent to commit an offense.  The statutory
presumption is sufficient to create a prima facie case and avoid a
judgment of acquittal."); see also Thomas v. State, 655 So.2d 163,
164 (Fla. 4th DCA 1995) (finding defendant's self-serving
statements for reason for breaking into the home in the early hours
of morning did not negate the statutory presumption so as to
preclude submission of the case to the jury to evaluate defendant's
explanation along with the presumption).

[12] See Robinson v. State, 766 So.2d 283 (Fla. 4th DCA 2000)
(stating "the PRR [(prison releasee reoffender)] statute as then
drafted limits the enhanced sentencing as a PRR to those burglaries
that involve a structure occupied by people").  However, the
Legislature amended Florida Statutes § 775.082, effective July 1,
2001, to include burglary of an unoccupied dwelling as a qualifying
offense under the statute.  See Mercado v. State, 13 So.3d 1112
(Fla. 3rd DCA 2009); Fla. Stat. § 775.082(9)(a)1.q.(2001).

motion, and the court denied the motion on the merits on the reasons in the State's response. Upon Petitioner's appeal, the appellate court affirmed the trial court's denial per curiam. This Court will not defer to the state courts' rulings since the post conviction court based its ruling on the State's response, which did not specifically address the issue of prison releasee reoffender sentencing.

Petitioner has failed to establish that counsel's performance was deficient. On March 15, 2007, the State filed its Notice of Intent to Classify Defendant as a Prison Releasee Reoffender and provided copies "by hand" to Bender and counsel. Resp. Ex. D. The State's notice stated that the State would seek to have the trial court classify Bender as a prison releasee reoffender and sentence him to fifteen years of imprisonment pursuant to Florida Statutes § 775.082.[13] Acknowledging the State's March 15, 2007 Notice of Intent to Classify Defendant as a Prison Releasee Reoffender and the subsequent plea agreement,[14] counsel stated, at the March 27th plea proceeding, that Bender would be sentenced as a prison releasee reoffender. See Plea Tr. at 3-4.

---

[13] Florida Statutes § 775.082(9)(a)1.q. provides for prison releasee reoffender sentencing for any defendant who commits burglary of a dwelling within three years after being released from a state correctional facility operated by the Department of Corrections.

[14] The plea agreement stated that Bender would be sentenced to fifteen years of imprisonment with the "mandatory minimum sentence pursuant to section 775.082." Resp. Ex. G at 7, Plea of Guilty and Negotiated Sentence.

Moreover, the trial judge reviewed Bender's status with the State, and the State agreed that Bender would be sentenced as a prison releasee reoffender, not as a habitual felony offender. See id. at 5-6. To ensure that Bender understood the sentencing discussion, the trial judge stated:

> Mr. Bender, you understand all this? We're talking about not being able to impose both those classifications on you so that the HFO, the habitual felony offender is going to drop off and we'll just do prison releasee reoffender.

Id. at 6-7. Additionally, the trial judge informed Bender that the minimum mandatory sentence for prison releasee reoffender sentencing was fifteen years. Id. at 7-8. Petitioner affirmed that he understood he would receive fifteen years of imprisonment as a prison releasee reoffender and that the minimum mandatory was fifteen years. Id. at 8. After reviewing various matters, the trial judge stated: "You've heard Miss Mairs state what the negotiated sentence is to be. Other than what she just said has anyone promised you anything different from that or anything in addition to that to get you to plead guilty?" Id. at 10. Petitioner answered, "[n]o, sir." Id. at 11.

After accepting the plea and finding that Bender had entered the plea freely, intelligently and voluntarily with a full understanding of the sentence, id. at 14-15, the trial judge reviewed the State's evidence for prison releasee reoffender classification and found that Bender met the statutory criteria to

24

be classified as a prison releasee reoffender under § 775.082. <u>Id</u>. at 15-17. When the trial judge asked Bender if he wanted to make any statements, Bender responded: "No, sir, Your Honor." <u>Id</u>. at 17. Given the record, counsel's performance was within the wide range of professionally competent assistance.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59. Moreover, given the plea agreement and counsels' statements, the trial judge's advice, and Bender's responses at the plea hearing, Bender was fully aware that the commission of the burglary of a dwelling qualified for prison releasee reoffender sentencing and that the trial judge would classify and sentence him as a prison releasee reoffender pursuant to the plea agreement. <u>See</u> Plea Tr.; Resp. Ex. D; <u>see</u> <u>also</u> http://www.dc.state.fl.us/ActiveInmates (reflecting that Bender was released from the state correctional facility on April 1, 2006, and committed the burglary offense on January 25, 2007). Therefore, Bender's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## VIII. Conclusion

Upon consideration of the foregoing, the undersigned finds that "[u]nder the doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard, <u>see</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam)," Petitioner's ineffective assistance claims fail. <u>Knowles</u>, 129 S.Ct at 1420. In the alternative, Petitioner's claims are without merit. Accordingly, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

## IX. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be

filed in this case.  Such termination shall serve as a denial of the motion.

4.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of October, 2011.

MARCIA MORALES HOWARD
United States District Judge

sc 10/11
c:
Richard S. Bender
Ass't Attorney General (Hill)